**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CARMELL WEEKS,<br>Plaintiff,<br>v.<br>CITY OF EAST POINT, *et al.*,<br>Defendants. | Civil Action No.<br>1:25-cv-05213-SDG |

**OPINION AND ORDER**

This case is before the Court on the motions to dismiss filed by Defendants M.T. Cruz, R.A. Michaud, and the City of East Point [ECFs 12, 13, 14]. Defendants seek to dismiss several federal and state civil rights claims against them arising out of the execution of a search warrant at Plaintiff Carmell Weeks' home and her subsequent arrest and incarceration. Because Weeks plausibly alleges that Defendants Cruz and Michaud made material misstatements in their warrant application and later defamed her after their search of her home revealed no evidence of a crime, Weeks states an illegal search claim under federal law and a defamation claim under state law. Weeks also plausibly alleges that the City maintains a custom of rejecting outside prescription medication brought for arrestees being held at its jail, in deliberate indifference of her serious medical needs, and therefore she states a deliberate indifference claim under federal law. However, Weeks fails to state a procedural due process claim under federal law,

and the Georgia Constitution does not provide Weeks a cause of action for alleged violations of its own unreasonable search prohibition.

Accordingly, the City's motion to dismiss is **DENIED**, and Cruz and Michaud's motions to dismiss are **GRANTED IN PART and DENIED IN PART**. Weeks' motion to amend and motion for leave to file a corrected response [ECFs 15, 21] are **DENIED as moot**.

## I. BACKGROUND[1]

This is a civil rights case under 42 U.S.C. § 1983 and Georgia law. Cruz and Michaud are officers with the City's police department.[2] In February 2024, Cruz obtained a warrant to search Weeks' home for illegal drugs and drug paraphernalia.[3] Michaud was Cruz's supervisor and authorized Cruz to seek the search warrant for Weeks' home.[4]

According to the complaint, Cruz presented no evidence in support of the warrant application that Weeks was involved in illegal activity or that a suspected

---

1 At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

2 Compl., ECF 1-1, ¶ 11.

3 *Id.* ¶ 8; *see also id.*, Ex. A.

4 *Id.* ¶ 10.

drug dealer resided in her home.[5] Instead, Weeks alleges that Cruz intentionally misstated facts in his affidavit in support of the warrant.[6] In his warrant application, Cruz attests that he observed a suspected drug dealer, Diego Collins, at Weeks' home, appearing to sell narcotics.[7] Cruz then engaged a confidential informant to conduct controlled purchases at the home on three occasions.[8] During one of the purchases, Collins was reported to enter the home before reemerging with marijuana.[9] During another purchase, Collins greeted the informant at the door of the home and sold the informant powdered cocaine.[10] However, Weeks alleges that she lived alone at the home and had the only key; she did not know

---

5 *Id.* ¶ 9.

6 *Id.* ¶ 15.

7 ECF 12-1, at 3. The Court may consider the search warrant application attached to Cruz and Michaud's motions to dismiss pursuant to the incorporation-by-reference doctrine. Under that doctrine, "a court may properly consider a document not referred to or attached to a complaint . . . if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The application is central to Weeks' claims, as Weeks contends the application contains material misstatements. Additionally, Weeks does not dispute the application's authenticity, but rather the veracity of the statements made therein.

8 ECF 12-1, at 3–5.

9 *Id.* at 3–4.

10 *Id.* at 4–5.

Collins, Collins was never inside the home, and she did not give him a key; and she always locked her doors when she was not home.[11]

Officers searched Weeks' home in March 2024.[12] However, they did not find anything to implicate Weeks in a drug crime.[13] After the search, Michaud authorized Cruz to place a sign on Weeks' door stating that the City police department "just . . . TOOK OUR DRUGS!! We are officially CLOSED!! They say they are Coming back so GO AWAY!!!"[14]

Weeks was charged with a misdemeanor for "maintaining a dive" and was later arrested on a bench warrant after failing to appear for a court hearing.[15] At the time of her arrest, Weeks was taking prescription medication to treat seizures.[16] Weeks did not have her medication when she was arrested, and so her relatives attempted to bring the medication to the jail.[17] However, multiple officers told Weeks' relatives that the jail would not accept outside medication.[18] Despite

---

11 Compl., ECF 1-1, ¶¶ 15–16.

12 *Id.* ¶ 11.

13 *Id.* ¶ 24.

14 *Id.* ¶¶ 19, 35; *see also id.*, Ex. D (emphases in original).

15 *Id.* ¶ 25. "Maintaining a dive" appears to refer to § 13-2008 of the East Point Code of Ordinances, which defines a "dive" to include a place where "illegal drugs are found, possessed, kept or sold."

16 Compl., ECF 1-1, ¶ 46.

17 *Id.* ¶¶ 47–48; *see also* ECF 8 (Compl., Ex. G).

18 *See id.*

Weeks' medical screening report at the jail identifying her medication and seizure condition, jail staff did not order her medication for 10 days.[19] As a result, Weeks suffered three seizures while incarcerated.[20]

Weeks initially filed her complaint in the State Court of Fulton County, Georgia, in July 2025, bringing six counts: (1) illegal search in violation of her Fourth and Fourteenth Amendment rights, presumably under § 1983, against Cruz and Michaud; (2) a similar claim under the Georgia Constitution's unreasonable search provision, art. I, § I, ¶ XIII, against Cruz and Michaud; (3) reputational damage in violation of her Fourteenth Amendment procedural due process rights, also presumably under § 1983, against Cruz and Michaud; (4) deliberate indifference under § 1983 against the City; (5) punitive damages against Cruz and Michaud; and (6) state law defamation against Cruz and Michaud.[21] Defendants removed the case and now move to dismiss on various grounds.[22]

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to

---

19 Compl., ECF 1-1, ¶ 50; *see also id.*, Ex. F.

20 *Id.* ¶ 51.

21 *See generally* Compl.

22 ECFs 1, 12–14.

relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A complaint is plausible on its face when the plaintiff pleads facts sufficient for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The principle that the Court must accept all well-pleaded facts as true at this stage does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Cruz and Michaud's arguments in support of dismissal are essentially identical, and therefore the Court will consider them together. Cruz and Michaud seek to dismiss the claims against them on the grounds that: (1) the complaint is an impermissible shotgun pleading; (2) Weeks fails to state plausible illegal search and procedural due process claims under § 1983; (3) the Georgia Constitution does not provide a cause of action for alleged violations of its unreasonable search provision; (4) they are entitled to official immunity as to Weeks' state law claims; (5) they are entitled to qualified immunity as to her federal law claims; and (6) because Weeks' underlying claims fail, her punitive damages claim fails as well. Because Weeks plausibly alleges that Cruz and Michaud made material misstatements in their warrant application, and that they later defamed her after their search of her home revealed no evidence of a crime, Weeks states a § 1983 illegal search claim and a state law defamation claim, and Cruz and Michaud are not presently entitled to qualified or official immunity from those claims. However, Weeks fails to state a § 1983 procedural due process claim, and the Georgia Constitution does not provide Weeks a cause of action for alleged violations of its own unreasonable search prohibition, so those claims are dismissed. It follows that Weeks' complaint is not an impermissible shotgun pleading, and her claim for punitive damages remains viable.

Separately, the City moves to dismiss the § 1983 deliberate indifference cause of action for failure to state a claim.[23] However, because Weeks plausibly alleges that the City maintains a custom of rejecting outside prescription medication brought for inmates being held at its jail, in deliberate indifference of her serious medical needs, she states a § 1983 claim against the City.

**A. Section 1983 Illegal Search Claims against Cruz and Michaud**

Because the concepts of probable cause and qualified immunity are deeply intertwined in the context of Weeks' § 1983 illegal search claims against Cruz and Michaud, the Court will consider them together. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment," an analysis that "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 243–44 (internal quotation marks and citations omitted).

---

[23] Weeks' complaint expressly excludes the City from its punitive damages claim in Count 5, and so the Court need not consider the City's argument for dismissal of that claim. *See* Compl., ECF 1-1, ¶ 3.

The Fourth Amendment "prohibits, on its face, unreasonable searches and seizures, and restricts warrant searches to those based upon probable cause." *United States v. McBean*, 861 F.2d 1570, 1572–73 (11th Cir. 1988). Where, as here, the search at issue is supported by a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922–923 (1984)). However, "a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." *Leon*, 468 U.S. at 914.

To state her illegal search claim, Weeks must plausibly allege a lack of probable cause to search her apartment. *Turner v. Williams*, 65 F.4th 564, 582 (11th Cir. 2023). The Eleventh Circuit uses a two-part test to determine whether a misstatement in a warrant affidavit constitutes a Fourth Amendment violation: (1) was there an intentional or reckless misstatement or omission; and (2) if so, would probable cause be negated if the offending statement was removed or the omitted information included, *i.e.*, was the misstatement or omission material. *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019).

At this juncture, this analysis turns on the parties' credibility. Cruz's affidavit attests that a confidential informant made controlled drug purchases at

Weeks' residence, where the seller (Collins) was observed emerging from Weeks' apartment with marijuana and powdered cocaine. The crux of Weeks' complaint is that this observation was simply false: she did not know Collins or let him in her apartment, and she held the only key and kept her apartment locked, so it would be impossible for Collins to conduct a narcotics operation out of her home. Self-serving as this may be, it is not implausible, particularly considering that the resulting search of Weeks' home yielded no evidence of a crime. The Court can also reasonably infer that Cruz's (allegedly) inaccurate recitation of the controlled purchases was made deliberately or recklessly, as Cruz's affidavit suggests that he personally observed the purchases. Because Cruz and Michaud do not contest the materiality of this statement for the purposes of their motions,[24] Weeks plausibly alleges a violation of her Fourth Amendment right to be free from unreasonable searches, and Defendants are not presently entitled to qualified immunity.[25]

### B. Georgia Constitutional Claims against Cruz and Michaud

Weeks also brings similar illegal search claims based on the Georgia Constitution's unreasonable search provision, art. I, § I, ¶ XIII.[26] Cruz and

---

24 ECF 12, at 14; ECF 13, at 14.

25 Because Weeks may proceed on her § 1983 illegal search claim, the Court declines to reach the issue of whether the warrant was overbroad in violation of the Fourth Amendment.

26 Much like the federal Fourth Amendment, this state constitutional provision states that "[t]he right of the people to be secure in their persons, houses,

Michaud seek to dismiss those claims on the ground that Georgia law does not provide a cause of action for violations of its constitution. Weeks acknowledges Cruz and Michaud's contrary caselaw but contends that the decisions in *Owens v. Way*, 141 Ga. 796 (1914), and *Long v. Jones*, 208 Ga. App. 798 (1993), support her proposition that the Georgia Constitution affords her a cause of action.

Considering this issue in a recent opinion, Senior U.S. District Judge Richard W. Story noted that, while "some Georgia cases appear to implicitly recognize a cause of action for a violation of the Georgia Constitution," *Catarino v. Speed*, No. 2:24-CV-24-RWS, 2025 WL 2480694, at *12 (N.D. Ga. Aug. 22, 2025) (citing *Porter v. Massarelli*, 303 Ga. App. 91 (2010) and *Long*), the Georgia Court of Appeals has recently held in no uncertain terms that "Georgia law contains 'no equivalent to 42 U.S.C. § 1983,'" *id.* at *11 (quoting *Collins v. Schantz*, 369 Ga. App. 282, 286 (2023) (quoting *Howard v. Miller*, 222 Ga. App. 868, 871 (1996))). In *Collins*, the Georgia Court of Appeals held that its decision in *Porter* was unpersuasive on this issue, reasoning that *Porter* "did not address the precise issue raised here—specifically, whether a cause of action exists for state constitutional violations." 369 Ga. App. at 287 n.5.

---

papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized."

The Court of Appeals' decision in *Long* is more cryptic: in the same paragraph, the court wrote that it "need not independently address [plaintiff's] claims that the restraints were a battery and violated the Georgia Constitution," in addition to violating the plaintiff's Fourteenth Amendment due process rights, while also "conclud[ing] that Art. I, Sec. I, Par. XVII of the Georgia Constitution, which states that no person shall be abused while under arrest, provides an independent state ground for this action, and provides at least as much protection to pre-trial detainees under the circumstances of this case as the Fourteenth Amendment due process clause." 208 Ga. App. at 800. Ultimately, the court in *Long* grounded its decision in "federal constitutional standards," *id.*, and thus it is not necessarily inconsistent with *Howard* and *Collins*.[27]

That leaves the Georgia Supreme Court's decision in *Owens v. Way*, 141 Ga. 796. In *Owens*, the court affirmed an injunction preventing police officers from opening a safe that was seized and removed from the plaintiff's place of business;

---

27 Alternatively, Senior U.S. District Judge Thomas W. Thrash concluded in a recent opinion that, while "the Georgia Court of Appeals impliedly condoned a *Bivens*-like claim under the Georgia Constitution in *Long*," that implicit holding should not be extended to other constitutional provisions, based on the unequivocal holding of *Collins. McClam v. City of Riverdale*, No. 1:23-CV-4111-TWT, 2024 WL 4011958, at *6 (N.D. Ga. Aug. 29, 2024). *Long* involved the prohibition against the abuse of prisoners contained in art. I, § I, ¶ XVII of the Georgia Constitution, whereas Weeks' claims here involve the Georgia Constitution's prohibition on unreasonable searches, art. I, § I, ¶ XIII.

the safe had been seized after the officers made a warrant arrest of a third person (the plaintiff's uncle), based on evidence that the safe contained other evidence of the arrestee's charged crime. *Id.* The court reasoned that "the power of an arresting officer to take the property of the defendant, to be used as evidence of the crime charged against him in the warrant, is quite different from the taking of the property of third persons by virtue of no other process save that of the warrant against the accused," and thus the officers' seizure of the plaintiff's safe based only on an arrest warrant that did not implicate the plaintiff violated the Georgia Constitution's protection against unreasonable searches. *Id.* The court further held that injunctive relief was available to prevent the officers from damaging the plaintiff's property while it was in their possession. *Id.*

It is a plausible reading of *Owens* that the Georgia Constitution provides some cause of action to prevent the kind of harm described there. But this Court has not located any reported decision of the Georgia courts supporting Weeks' contention here, that the Georgia Constitution's unreasonable search provision supports a *Bivens*-like[28] claim for damages against the searching officers. Rather,

---

28 "*Bivens*" refers to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), where the court held that, "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" and certain other constitutional violations. *Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017).

the Georgia Supreme Court has held that a *Bivens*-like claim is not available against individual state officials "to recover *damages* . . . despite the absence of any express authority conferring such a right." *State Bd. of Educ. v. Drury*, 263 Ga. 429, 434, 435 (1993) (emphasis in original); *see also id.* at 435 ("It necessarily follows that, as against the individual [state officials], [plaintiffs] likewise have no viable claim for damages under an eminent domain or *Bivens* theory."). Accordingly, the Court concludes that the Georgia Supreme Court would not permit Weeks to pursue a *Bivens*-like claim based on the unreasonable search provision of the Georgia Constitution. That claim is therefore dismissed.

### C. Section 1983 Procedural Due Process Claims against Cruz and Michaud

Weeks also alleges that the poster Cruz and Michaud placed on her door (stating that the police department "just . . . TOOK OUR DRUGS!!") stigmatized her reputation in violation of her procedural due process rights. For the requirements of procedural due process to apply, Weeks must plausibly allege "the deprivation of a constitutionally protected liberty or property interest." *Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005). However, "injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701–02 (1976)). Instead, a plaintiff must satisfy the "stigma-plus" test, where "a plaintiff claiming a deprivation based on defamation by the government

must establish the fact of the defamation 'plus' the violation of some more tangible interest." *Id.* at 1259–60 (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001)). The "plus" prong of the test is met where "state action ha[s] significantly altered or extinguished 'a right or status previously recognized by state law.'" *Id.* at 1260 (quoting *Paul*, 424 U.S. at 711).

Here, assuming *arguendo* that the defamation prong is met, Weeks has not shown that the poster placed on her door altered a right or status she previously had under state law. While Weeks alleges that she lost her job,[29] she does not allege that the poster "has significantly altered or extinguished any right or interest guaranteed to" her under state law. *Id.* at 1264. Thus, "[w]ithout a protected right or status, [Weeks] has alleged nothing more than a defamation claim," and "so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable" under Section 1983. *Id.* at 1263, 1263 n.15 (quoting *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)). Accordingly, Weeks' § 1983 procedural due process claim is dismissed.

**D. State Law Defamation Claims against Cruz and Michaud**

Weeks also brings state law defamation claims against Cruz and Michaud based on the poster. Cruz and Michaud seek to dismiss those claims as barred by state law official immunity. Assuming for the purposes of this motion that the

---

29 Compl., ECF 1-1, ¶ 39.

placing of the poster was part of Cruz and Michaud's discretionary duties, Weeks plausibly alleges that the poster was defamatory, and that Cruz and Michaud's actions were performed with actual malice.

Under Georgia law, "[t]he doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity. Official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." *Everson v. DeKalb Cnty. Sch. Dist.*, 344 Ga. App. 665, 667 (2018). Georgia courts have defined discretionary acts as those "call[ing] for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Reed v. DeKalb Cnty.*, 264 Ga. App. 83, 86 (2003) (quoting *Harvey v. Nichols*, 260 Ga. App. 187, 191 (2003)).

The parties have not addressed whether Cruz and Michaud's actions in placing the poster on Weeks' door were taken within the scope of their official authority or called for the exercise of personal deliberation and judgment. That is unfortunate, as the official immunity analysis turns on this threshold determination. Nevertheless, for the purposes of this motion, the Court will assume that Cruz and Michaud's actions were discretionary, as the Court further

concludes that Weeks plausibly alleges that these Defendants acted with actual malice.

In the context of official immunity, the Georgia Supreme Court has interpreted the malice requirement narrowly:

> "Actual malice" requires a deliberate intention to do wrong. It does not include "implied malice," i.e., the reckless disregard for the rights or safety of others. Instead, actual malice requires more than "harboring bad feelings" or "ill will" about another; rather, ill will must also be combined with the intent to do something wrongful or illegal. Moreover, the phrase "actual intent to cause injury" has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.

*Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019) (cleaned up).

Here, Weeks' allegations permit the reasonable inference that Cruz and Michaud placed the poster with a deliberate intention to do wrong. Weeks alleges that the officers found nothing in the search of her apartment, and yet they placed a poster on her door stating her home was a "drug house" and that officers had taken drugs from the premises. Viewing the complaint in the light most favorable to Weeks, the poster was both defamatory *per se*, *see Cottrell v. Smith*, 299 Ga. 517, 524 (2016) ("To constitute slander per se, the words at issue must charge the commission of a specific crime punishable by law.") (cleaned up), and placed with a deliberate intent to injure Weeks' reputation, as the officers had just recently

failed to seize any drugs at her home. Accordingly, Cruz and Michaud are not entitled to official immunity as to Weeks' defamation claim at this stage.

**E. Section 1983 Deliberate Indifference Claim against the City**

The City moves to dismiss Weeks' § 1983 deliberate indifference claim on the ground that Weeks fails to plausibly allege a City policy or custom, as required to state a § 1983 claim against a municipality under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). But Weeks plausibly alleges that City personnel at the East Point jail observe a custom of refusing to accept outside medication brought for inmates, which caused Weeks to go without her seizure medication for several days, leading her to suffer three seizures while incarcerated. Therefore, Weeks states a § 1983 deliberate indifference claim against the City.

To bring a § 1983 claim against a municipality, the plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In this context, a custom is "a practice that is so settled and permanent that it takes on the force of the law." *Id.* at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999), *overruled in part on other grounds by Manders v. Lee*, 338 F.3d

1304 (11th Cir. 2003)). To demonstrate a custom, "it is generally necessary to show a persistent and wide-spread practice." *Id.* (cleaned up).

The City submitted a certified copy of its Jail Operations Standard Operating Procedure, which indicates that outside prescription medication brought to the jail for an inmate is to be accepted and logged.[30] However, Weeks plausibly alleges that jail staff have a custom of rejecting outside medication. According to the affidavit of Shirley Weeks (Plaintiff Carmell Weeks' mother), after Carmell's arrest, Shirley retrieved Carmell's prescription seizure medication and asked her granddaughter to take the medication to the jail.[31] The granddaughter returned and told her that an officer at the jail refused to take the medication.[32] Shirley then called the jail and spoke to another officer, who told her that she could not bring the medicine to the jail.[33] Shirley asked the officer to check whether that was correct, and the officer returned and told her the jail would not accept any type of medication.[34] Shirley called back later and spoke to yet another officer, who said the same thing.[35] Viewed in the light most favorable to Weeks,

---

30 ECF 14-1, § 5.14.8.1.

31 ECF 8 (Compl., Ex. G), ¶¶ 4–6.

32 *Id.* ¶¶ 8–9.

33 *Id.* ¶¶ 10–11.

34 *Id.* ¶¶ 12–14.

35 *Id.* ¶¶ 15–17.

these allegations suggest that three different jail officers, working during different shifts, separately gave an identical answer to Shirley and her granddaughter that the jail would not accept outside prescription medication for its inmates. This permits the reasonable inference that the Weeks' experience was not an "an isolated incident," but rather "a demonstrated practice." *McDowell*, 392 F.3d at 1290.

This custom plausibly constitutes deliberate indifference to Weeks' constitutional rights as a pretrial detainee. A deliberate indifference claim has objective and subjective components. *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citation omitted). In this case, the objective component asks "whether the plaintiff experienced an objectively serious medical need." *Id.* (internal quotation marks and citation omitted). The subjective component asks whether the defendant "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836–40 (1994)). Subjective recklessness here means that "the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Id.* at 1283–84 (quoting *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc)). Whether a defendant "had the requisite knowledge of a substantial risk is a *question of fact* subject to demonstration in the usual ways, including inference from

circumstantial evidence." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 842) (emphasis in original). The City does not dispute that Weeks, having suffered three seizures, satisfies the objective component.

At this stage, Weeks has plausibly alleged that the City's custom put her at substantial risk of serious harm. The fact that the City has an official policy to accept outside medication permits the reasonable inference that it has subjective knowledge of the serious risk of withholding inmates' access to their prescription medication. It follows that a custom of rejecting outside medication in defiance of the policy disregards that risk. It is also reasonable to infer that "*this* [custom] was highly likely to inflict the *particular* injury [Weeks] suffered." *McDowell*, 392 F.3d at 1292 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 412 (1997)) (emphases in original, internal quotation marks omitted). The official policy facilitates inmates' uninterrupted access to their medication, reducing the likelihood of a medical emergency, but a custom of rejecting outside medication may quite obviously lead to an interruption in the inmate's course of treatment, thereby increasing the likelihood of an emergency otherwise kept in check by the medication. Thus, Weeks plausibly alleges a municipal custom constituting deliberate indifference to her constitutional rights. Accordingly, Weeks states a § 1983 deliberate indifference claim against the City.

## IV. CONCLUSION

The motions to dismiss filed by Cruz and Michaud [ECFs 12, 13] are **GRANTED IN PART and DENIED IN PART**. The City's motion to dismiss [ECF 14] is **DENIED**. Count 2 (illegal search claims pursuant to the Georgia Constitution against Cruz and Michaud) and Count 3 (§ 1983 procedural due process claims against Cruz and Michaud) are **DISMISSED**. Count 1 (§ 1983 illegal search claims against Cruz and Michaud), Count 4 (§ 1983 deliberate indifference claim against the City), Count 5 (punitive damages claims against Cruz and Michaud), and Count 6 (state law defamation claims against Cruz and Michaud) remain.

Defendants are **ORDERED** to file their answers to the remaining portions of the complaint within 14 days of this Order. The parties are further **ORDERED** to file their Joint Preliminary Report and Discovery Plan as required by LR 16.2, NDGa, within 30 days of Defendants' answers.

Weeks' motion for leave to file a corrected response to Michaud's motion to dismiss [ECF 21] is **DENIED as moot**, as the Court has considered the arguments made in Weeks' motion in preparing this Order. Because the documents filed as amended complaints at ECFs 8 and 9 are both copies of the Exhibit G referenced in Weeks' initial complaint, the Clerk is **DIRECTED** to change the document title

of ECF 8 to "Notice of Filing Exhibit G of Complaint" and to **STRIKE** ECF 9. Weeks' motion to amend the complaint [ECF 15] is **DENIED as moot**.

The Clerk of Court is **ORDERED** to submit this Order to undersigned after 60 days.

**SO ORDERED** this 28th day of September, 2026.

Steven D. Grimberg
United States District Judge